THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2014 AUG 29 PM 3: 26

)  BRANDON CALLIER and
)  DEVON PURTZ
)     Plaintiffs,
)        v.                    Case No.
)
)                              JUDGE DAVID BRIONES
)
)                              EP14CV0329
)
)  CHECKFREEPAY CORPORATION
)     Defendant.

## NATURE OF THE CASE

1. This is a civil action for money electronically drafted from accounts owned by Brandon Callier and Devon Purtz (collectively "Plaintiffs") via unauthorized wire transactions, and for loss of income suffered by the Plaintiffs against Defendant Checkfreepay Corporation. This action arises out of a Checkfreepay bill payment account opened on or about January 2014 in Nashville, Tennessee which was used to accept bill payments from customers and draft payments from the Plaintiffs' checking account. The Defendant's negligence, willful ignoring of complaints, and lack of compliance with Federal laws regarding reporting and identity verification were substantial contributing factors in causing the Plaintiffs' injuries.

## PARTIES

2. Plaintiff, Brandon Callier is a natural person and resident of El Paso County, with a mailing address of 6336 Franklin Trail, El Paso, TX 79912. Brandon Callier is 50% owner of Aero Finance, LLC.

1

3. Plaintiff, Devon Purtz is a natural person and resident of El Paso County, with a mailing address of 6220 Navajo Ave, El Paso, TX 79925. Devon Purtz is 50% owner of Aero Finance, LLC.

4. Defendant Checkfreepay Corporation is a wholly-owned subsidiary of Fiserv, Inc. Checkfreepay is a business which is used as a conduit to process bill payments from an address of 15 Sterling Drive, Wallingford, CT 06418.

## VENUE AND JURISDICTION

5. This Court has original jurisdiction over this action under 28 U.S.C. 1332, in that the amount of controversy exceeds seventy five thousand dollars ($75,000) and Plaintiffs are citizens of a state which is different from the states where the Defendant is incorporated and have their principal place of business.

6. Venue in this District is proper in that the defendant transacts business here, and the acts and electronic banking transactions occurred here. Also, most of the potential eye witnesses to the phone calls are located in El Paso, TX.

## FACTUAL ALLEGATIONS

7. Parent company Fiserv, Inc is a Fortune 500 Company and a part of the S&P 500. For the 2013 fiscal year Fiserv reported revenue of $4.8 Billion.

8. Defendant Checkfreepay is a Money Service Business (MSB) and is subject to the USA Patriot Act of 2001 and subject to the Bank Secrecy Act (BSA).

9. On or about January 2014, Craig Cunningham, a natural born person residing in Nashville, TN, without the knowledge or consent of Plaintiff Callier, opened an account with Defendant Checkfreepay Corporation in Plaintiff Callier's name in violation of 18 USC 1028(a).

10. The Checkfreepay bill payment account was opened through a field representative and employee of Defendant Checkfreepay in Nashville, TN.

11. Brandon Callier, a resident of El Paso, TX, was physically in El Paso, TX when the account was opened in his name.

12. The field representative of Defendant Checkfreepay did not take reasonable steps to ensure the opening of the Checkfreepay account was proper, lawful, and legitimate.

13. The Checkfreepay bill payment account was opened in Nashville, TN in the name of "Nash Cash."

14. Nash Cash is owned and operated by Craig Cunningham. Craig Cunningham is approximately 6 foot 3 inches and weighs about 280 pounds. Brandon Callier is approximately 5'11 inches and weighs 165 pounds. A reasonable check by Nash Cash would have reveled Craig Cunningham, is not Brandon Callier.

15. Brandon Callier is not an owner, operator, officer, or stakeholder of Nash Cash, and has no affiliation with Nash Cash of any sort.

16. Brandon Callier is an owner of, and operates, Aero Finance, LLC in El Paso, TX.

17. Devon Purtz is not an owner, operator, officer, or stakeholder of Nash Cash, and has no affiliation with Nash Cash of any sort.

18. Devon Purtz is an owner of, and operates, Aero Finance, LLC in El Paso, TX.

19. At no time did Brandon Callier or Devon Purtz fill out an application to open an account with Defendant Checkfreepay.

20. At no time did Brandon Callier or Devon Purtz view or sign a contract with Defendant Checkfreepay.

21. Defendant Checkfreepay failed to take reasonable assurances to validate the identity of the person opening the account. The USA Patriot Act Section 326 requires reasonable assurances be taken to verify identify when opening financial accounts.

22. Wire transfers via Defendant Checkfreepay's bill payment system unlawfully debited approximately $33,000 from the Plaintiffs' checking account from January 2014 through July 2014. These wire transfers resulted in approximately $33,000 in unauthorized debits being made to the Plaintiffs' checking account and being credited into accounts owned by Defendant Checkfreepay.

23. Defendant Checkfreepay has inadequate internal controls, identification verification safeguards, employee oversight, and corporate governance that led to Craig Cunningham being able to fraudulently open an account with Defendant Checkfreepay under Plaintiff Callier's name.

24. The Plaintiffs placed multiple phone calls to Defendant Checkfreepay and alerted them of the fraud associated with opening the account and money being stolen from the Plaintiffs' checking account via wire fraud through the Defendant Checkfreepay's bill payment system.

25. In one call, Checkfreepay was informed, the account was opened without the knowledge or consent of Plaintiff Callier. Defendant Checkfreepay was asked to remove the Plaintiff's checking account from their system. Defendant Checkfreepay refused to comply with the request because the Plaintiff did not know the terminal ID number. Plaintiff Callier informed Defendant Checkfreepay it was impossible to know the terminal ID number because the terminal was in Tennessee, while the Plaintiff lived in El Paso, and the account was opened via fraud which precluded the plaintiff from knowing the terminal ID.

26. In a second call, Defendant Checkfreepay was informed by the Plaintiff's the account was opened via fraud, and the Checkfreepay account was being used to commit wire fraud and steal money from the Plaintiff's checking account. The

Plaintiffs demanded the account be closed. The Defendant Checkfreepay's representative responded by hanging up the phone.

27. In a third call, Defendant Checkfreepay was asked to close the account. The Checkfreepay representative was told the account was fraud and wires were being used to steal the Plaintiff's money. The Checkfreepay representative refused to close the account. The Plaintiff then asked for the Checkfreepay registered agent's contact information. The Checkfreepay representative responded by hanging up the phone.

28. In a fourth call, Defendant Checkfreepay was again told of the fraudulent activity that resulted in the account opening and money being taken from the Plaintiff's checking account. Defendant Checkfreepay was told to close the account by the end of the day. Defendant Checkfreepay's representative responded by hanging up the phone.

29. In a fifth call, Defendant Checkfreepay was again told the Checkfreepay bill payment account was opened via fraud and was being used to steal money from the Plaintiff's checking account. The Checkfreepay representative agreed to remove the Plaintiff's checking account from the Checkfreepay bill payment account. However, the unauthorized drafts from the Plaintiff's checking account continued.

30. In a sixth call to Defendant Checkfreepay, the Plaintiff was told Defendant Checkfreepay had removed the checking information from the Plaintiff's checking account. Instead, only an email had been sent notifying a supervisor of the complaint. This email was not acted upon.

31. In this same sixth call to Defendant Checkfreepay, it was revealed by Defendant Checkfreepay that the account was actually in Plaintiff Callier's name. This was unknown to Plaintiff Callier prior to this phone call.

32. Defendant Checkfreepay refused multiple requests by Plaintiff Callier to close the account despite the account being in Plaintiff Callier's name. This makes Defendant Checkfreepay's actions particularly egregious. Defendant Checkfreepay was hanging up on Plaintiff Callier when informed the account was fraud. This was despite Defendant Checkfreepay knowing the account was in the name of the person making the complaint.

33. Defendant Checkfreepay continued to process bill payments through the Plaintiff's checking account despite being informed the account was opened via fraud and being told explicitly to cease processing through the Plaintiffs' checking account.

34. During this time, Plaintiffs were unable to replenish the account with new funds because all funds added to the account were immediately debited by Defendant Checkfreepay.

35. Defendant Checkfreepay violated multiple provisions of the USA Patriot Act of 2001, the Bank Secrecy Act, and the Identity Theft and Assumption Act of 1998.

36. In June 2014, the Plaintiff's checking account was depleted of funds and brought into a negative balance because of bill payments processed via Defendant Checkfreepay despite Defendant Checkfreepay being repeatedly told this was fraud and asked to cease processing bill payments through the Plaintiff's checking account. The Plaintiffs incurred multiple overdraft fees because of the negative balances brought on by Defendant Checkfreepay debiting payments from the Plaintiff's checking account.

37. In June 2014, the Texas Lottery Commission attempted to debit a payment from the Plaintiff's checking account in the amount of $4,000. The payment failed because the Plaintiff's account had been brought into a negative balance because of unauthorized debits by Defendant Checkfreepay.

38. The Plaintiff's Texas Lottery account was suspended because of a failure to pay the balance due on the account. The funds were unavailable because Defendant Checkfreepay willingly kept processing payments through the Plaintiff's checking account despite being informed multiple times of the fraud associated with the account, and being asked to stop debiting the Plaintiffs' account.

39. Numerous times during the months of June and July 2014, potential customers of Aero Finance attempted to cash checks at the Aero Finance locations in El Paso, TX. Aero Finance was unable to cash the checks because Defendant Checkfreepay had debited the Plaintiff's checking account via unauthorized bill payments and caused the Plaintiff's checking account to be in a negative balance state.

40. The Plaintiff's suffered the loss of check cashing revenue, the potential for future revenues through repeat business, embarrassment, and damage to reputation as a result of Defendant Checkfreepay.

41. Numerous times during the months of June and July 2014, potential customers of Aero Finance attempted to purchase lottery tickets at the Aero Finance locations in El Paso, TX. Aero Finance was unable sell lottery tickets to these customers because the Aero Finance lottery account was suspended for non-payment as a result of bill payments processed by Defendant Checkfreepay.

42. Plaintiffs were unable to pay the Texas Lottery Commission $4000 dollars because of their checking account being depleted of funds because of unauthorized drafts by Defendant Checkfreepay.

43. The Plaintiff's suffered loss of lottery revenues, the potential for future revenues through repeat business, embarrassment, and damage to reputation as a result of Defendant Checkfreepay.

44. In July 2014, the Plaintiffs were forced to close their checking account because Defendant Checkfreepay refused to stop the drafts on their checking account.

7

45. The Plaintiff's incurred significant expenses related to the closing of their checking account, opening a new checking account, and the transitioning of related accounts to the new checking account.

46. The Plaintiffs' checking account funds were held for a period of 30 days because of restrictions attached to opening a new checking account. This caused significant cash flow problems, an inability to cash checks, an inability to make new loans, and stress for the owners.

47. In June and July 2014, Plaintiff Callier suffered severe stress which caused anxiety attacks which resulted in Plaintiff Callier having to visit the doctor, and wear a heart monitor as a result of the anxiety attacks.

48. The opening of the account by Defendant Checkfreepay and the subsequent unauthorized drafts by Defendant Checkfreepay were the proximate cause for severe financial harm and emotional distress suffered by the Plaintiffs.

## CAUSES OF ACTION:
## COUNT I
## NEGLIGENCE – ACCOUNT OPENING

49. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

50. On or about January 2014, Craig Cunningham, a natural born person residing in Nashville, TN, without the knowledge or consent of Plaintiff Callier, opened an account with Defendant Checkfreepay Corporation in Plaintiff Callier's name in violation of 18 USC 1028a.

51. John Doe, a Checkfreepay field representative and employee, operating in his regular course of business, opened this bill payment account in Nashville, TN in Plaintiff Callier's name.

52. On or about, January 2014, John Doe, a Checkfreepay field representative visited the "Nash Cash" location in Nashville, TN.

53. Defendant Checkfreepay's investigation as part of the account opening did not reveal Plaintiff Callier was in El Paso, TX at the time of the account opening.

54. Defendant Checkfreepay's investigation as part of the account opening did not reveal Craig Cunningham, who opened the account, is not Plaintiff Callier.

55. Defendant Checkfreepay's investigation as part of the account opening did not reveal the name of the business, "Nash Cash," was not the name on the checking account linked to the Checkfreepay Account.

56. Plaintiff Callier signed no documents related to the opening of this Checkfreepay account.

57. Defendant Checkfreepay's investigation did not reveal Plaintiff Callier's signature did not match any documents signed as part of opening the Checkfreepay account.

58. Defendant Checkfreepay's investigation did not reveal a mismatch between the employer identification number (EIN) of the business, "Aero Finance" and the name on the Checkfreepay Account, "Nash Cash."

59. A reasonable investigation, as required by the United States Patriot Act, would have revealed there was no legal basis for opening the Checkfreepay account.

60. A reasonable investigation would have revealed the name of the business, "Nash Cash," was not the name on the checking account linked to the Checkfreepay Account.

61. Defendant Checkfreepay missed numerous red flags that indicated this account application and opening was not proper, lawful and legitimate.

62. Defendant Checkfreepay did not establish and implement with due care reasonable practices and procedures to prevent unlawful account openings that violate 18 USC 1028a.

63. Defendant Checkfreepay was careless and negligent in the investigation and verification of the documents used to open the Checkfreepay account.

64. Defendant Checkfreepay was careless and negligent in the verification of the identity of the person applying for the Checkfreepay account.

65. As a direct and proximate result of Defendant Checkfreepay opening an unauthorized account, the Plaintiffs had approximately $33,000 drafted from their checking account, suffered lost lending revenue, suffered lost check cashing revenue, suffered lost lottery revenue, suffered embarrassment, and suffered severe complications from stress.

## CAUSES OF ACTION:
## COUNT II
## NEGLIGENCE – FAILURE TO PROPERLY INVESTIGATE ACCOUNT FRAUD ALLEGATIONS

66. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

67. Plaintiffs made numerous complaints to Defendant Checkfreepay alleging fraud related to the account opening and the unauthorized nature of the drafts from the Plaintiffs' checking account.

68. Defendant Checkfreepay did not investigate these fraud claims in violation of the Bank Secrecy Act.

69. Defendant Checkfreepay's representatives hung the phone up on at least four different occasions when the Plaintiffs reported fraud to Defendant Checkfreepay.

70. The hanging up of the phone by Checkfreepay representatives when Federal crimes were reported was malicious, willful and harassing in nature.

71. Numerous Checkfreepay employees hung the phone up when being told about the nature of the account. This indicates a culture disseminated from the top down, and cannot be blamed on a "lone wolf" acting improperly.

72. Defendant Checkfreepay did not have reasonable telephone call training and monitoring procedures in place to properly monitor their employee's behavior.

73. Pursuant to 47 USC 217 and under the doctrine of agency, the officers, agents, and other persons acting on behalf of Defendant Checkfreepay, Defendant Checkfreepay is also liable for the actions, errors, and omissions of their agents, employees, and representatives.

74. Defendant Checkfreepay employees made no attempts to investigate the fraud allegations.

75. Defendant Checkfreepay did not take the reasonable step of calling the "Nash Cash" store to follow up on the fraud claims, nor did Defendant Checkfreepay take the reasonable step of sending the field representative back to the "Nash Cash" locations to visit the stores and investigate the fraud claims.

76. As a direct and proximate result of Defendant Checkfreepay opening an unauthorized account, the Plaintiffs had approximately $33,000 drafted from their checking account, suffered lost lending revenue, suffered lost check cashing revenue, suffered lost lottery revenue, suffered embarrassment, and suffered severe complications from stress.

## CAUSES OF ACTION:
## COUNT III
## VIOLATIONS OF THE USA PATRIOT ACT
## SECTION 326

77. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

78. On or about January 2014, John Doe, an employee or agent of Checkfreepay Corporation, assisted Craig Cunningham in opening a bill payment processing account in the name of Plaintiff Brandon Callier.

79. John Doe was an employee or agent of Checkfreepay Corporation, and was operating in his regular course of business in opening the bill payment account.

80. Checkfreepay Corporation did not take reasonable measures to verify the identity of the person opening the Checkfreepay account in violation of Section 326 of the USA Patriot Act.

81. Reasonable procedures would have revealed Brandon Callier is not Craig Cunningham.

82. Reasonable identity verification procedures would have revealed the name on the bank account, Aero Finance, did not match the name of the business, Nash Cash.

83. Reasonable identity verification procedures would have revealed the Employer Identification Number (EIN) did not match the name of the business.

84. Reasonable identity verification procedures would have revealed an address mismatch.

85. As a direct and proximate result of Checkfreepay Corporation failing to employ reasonable measures to verify identity, Craig Cunningham was able to open an account in Plaintiff Brandon Callier's name on or about January 2014.

86. As a direct and proximate result of the account opening and operation of the bill payment account, the Plaintiffs sustained the loss of monies from their checking account of approximately $33,000, lost check cashing revenue, lost loan revenue, and lost lotto sale revenue.

87. As a direct and proximate result of the account opening and operation of the bill payment account, the Plaintiffs were incapacitated from pursuing their regular course of business in lending and check cashing. Plaintiffs suffered embarrassment and lost repeat business.

## COUNT IV
## VIOLATIONS OF THE BANK SECRECY ACT

88. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

89. During them months of May and June 2014 the Plaintiffs made numerous fraud complaints to Defendant Checkfreepay.

90. Defendant Checkfreepay declined to investigate these claims and failed to file Suspicious Activity Reports (SARs) as required by the United States Department of Treasury Financial Crimes Enforcement Network (FINCEN).

91. On or about May 2014, Defendant Checkfreepay Corporation received a request from Craig Cunningham to change the bank account information on the bill payment account. The information on the request was incorrect.

92. The lack of correct information should have prompted Checkfreepay Corporation to submit a Suspicious Activity Report, or at the minimum open an inquiry into why the account owner did not know the correct information on the account.

93. Checkfreepay Corporation did not file a Suspicious Activity Report.

94. During the month of June 2014, Checkfreepay Corporation received numerous reports of stolen identity, fraudulent transactions, wire fraud and other crimes from Plaintiff Brandon Callier and his agents.

95. Defendant Checkfreepay Corporation declined to investigate these reports and failed to file a Suspicious Activity Report as required by law.

96. As a direct and proximate result of refusing to investigate the identity theft claims and failing to file the Suspicious Activity Reports, the Plaintiffs sustained the loss of monies from their checking account, lost check cashing revenue, lost loan revenue, and lost lotto sale revenue. Plaintiffs suffered embarrassment and lost repeat business.

97. As a direct and proximate result of the account opening and operation of the bill payment account, the Plaintiffs were incapacitated from pursing their regular course of business in lending and check cashing.

## COUNT V
## VIOLATIONS OF 18 U.S.C. 1343
## FEDERAL WIRE FRAUD CRIMES

98. Plaintiff Callier incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

99. On or about June 2014, Defendant Checkfreepay was told explicitly the bill payment account was opened via fraud and all authorizations to draft the Aero Finance checking account were void and not permitted by Plaintiff.

100. On or about June 2014, Defendant Checkfreepay was told explicitly to cease all drafts from the Plaintiff's checking account.

101. On or about June 2014, Defendant Checkfreepay knowingly, intentionally and willfully continued to debit the Plaintiffs' checking account despite being told the drafts were the result of fraud.

102. Checkfreepay had been informed of the false pretenses surrounding the drafts and still intentionally drafted the payments from the Plaintiffs' checking account.

103. The Plaintiffs were forced to close their checking account and incur costs because Defendant Checkfreepay refused to stop the drafts despite having their authorization revoked.

104. As a direct and proximate result of refusing to investigate the identity theft claims and failing to file the Suspicious Activity Reports, the Plaintiffs sustained the loss of monies from their checking account, lost check cashing revenue, lost loan revenue, and lost lotto sale revenue. Plaintiffs suffered embarrassment and lost repeat business.

105. As a direct and proximate result of the account opening and operation of the bill payment account, the Plaintiffs were incapacitated from pursing their regular course of business in lending and check cashing.

15

## COUNT VI
## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT
## REGULATION E 12 CFR 205

106. Plaintiff Callier incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

107. On or about June 2014, Defendant Checkfreepay was told explicitly the bill payment account was opened via fraud and all authorizations to draft the Aero Finance checking account were void and not permitted by Plaintiff.

108. Defendant Checkfreepay did not initiate an investigation as required by Regulation E: Electronic Fund Transfers 12 CFR 205.

109. Defendant Checkfreepay is liable for damages under 15 U.S.C. 1693(h) for failure to stop the electronic funds transfers when instructed to do so.

110. Defendant Checkfreepay by omission of an investigation, knowingly and willfully concluded that the Checkfreepay account was not in error. This conclusion would not have been reached had Defendant Checkfreepay examined the available evidence at the time.

111. As a result of each and every one of the Defendants' willful or knowing violations of the Electronic Funds Transfer Act, Plaintiff Callier is entitled to treble damages in the amount $99,000 pursuant to TITLE IX Section 915(a)(1).

## PRAYER FOR DAMAGES AND RELIEFS

WHEREFORE, Plaintiffs, Callier and Purtz, respectfully prays and requests that judgment be entered against Defendant Checkfreepay:

- Declaratory judgment that Defendant Checkfreepay violated the USA Patriot Act, Bank Secrecy Act, Identity Theft and Assumption Act, 18 U.S.C. 1028(A); Regulation E: Electronic Fund Transfers, 15 U.S.C. 1693(h) and

A. Treble damages in the amount of $99,000 based upon actual damages in the amount of the $33,000 for drafts out of the Plaintiff's checking account taken by Defendant Checkfreepay without authorization from the Plaintiffs; and

B. Actual damages in the amount of $4,000 for getting the Aero Finance Texas Lotto Account closed for non-payment of monies due; and

C. Actual damages in the amount of $500 for overdraft fees incurred because of unauthorized drafts from the Aero Finance checking account into accounts owned by Defendant Checkfreepay; and

D. Actual damages in the amount of $50,000 for lost revenue associated with loans that were turned down because Checkfreepay depleted the Aero Finance checking account via unauthorized drafts; and

E. Actual damages of $2,000 in lost check cashing revenue; and

F. Actual damages of $3,000 for expenses incurred related to closing the Plaintiffs checking account, opening a new checking account, and transitioning other accounts to the new checking account; and

G. Actual damages of $50,000 for damage to reputation, embarrassment in front of customers, Aero Finance employees, potential Aero Finance lenders, potential Aero Finance investors, and damage to the company standing in the community; and

17

H. Actual damages of $5,000 for interest on short term loans forced to be taken as a result of not having access to funds unlawfully taken by Defendant Checkfreepay; and

I. Punitive damages in the amount of $1,521,120 for actions by Defendant Checkfreepay that were so egregiously insidious that actual damages are not enough to ensure Checkfreepay will not repeat the offenses; and

J. Attorney's fees of $2,112 for bringing this action; and

K. Costs and expenses of $2,500 for bringing this action; and

L. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se

*[signature]*

Devon Purtz
Plaintiff, Pro Se

## DEMAND FOR JURY TRIAL

Please take notice that the Plaintiffs hereby requests trial by jury in this action.

I, Brandon Callier, Affiant, hereby attest to and certify that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted,

*/s/ Brandon Callier*
Brandon Callier
6336 Franklin Trail
El Paso, TX 79912

*/s/ Devon Purtz*
Devon Purtz
6220 Navajo Ave
El Paso, TX 79925

August 29, 2014