IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BRANDON CALLIER and DEVON PURTZ,<br>　　Plaintiffs,<br><br>v.<br><br>CHECKFREEPAY CORPORATION,<br>　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | EP-14-CV-329-DB |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant CheckFreePay Corporation's ("Defendant") "Motion to Dismiss First Amended Complaint and Memorandum of Law in Support" ("Motion"), filed in the above-captioned cause on January 5, 2015. Therein, Defendant asks the Court to dismiss all of Plaintiffs Brandon Callier and Devon Purtz's ("Plaintiffs") claims. After due consideration, the Court is of the opinion that Defendant's Motion should be granted in part and—subject to condition—denied in part.

### BACKGROUND

Plaintiffs jointly own and operate Aero Finance, LLC ("Aero Finance"), which is in the business of writing loans, cashing checks, and selling lottery tickets in El Paso, Texas. Pl. Am. Compl. ¶¶ 2–3, 48, 50, 52. Defendant is a corporation that provides nationwide walk-in bill-payment services. Def. Mot. Dismiss 1. Plaintiffs allege that Craig Cunningham, a former business partner of Mr. Callier, fraudulently used Mr. Callier's identity to open a CheckFreePay bill-payment account that drew on Plaintiffs' "Aero Finance checking account." Pl. Am. Compl. ¶¶ 9, 112, Ex. A. The checking account, although "in the name of Plaintiffs Callier and Purtz," was "opened for business reasons" and served as a checking account for Aero Finance. Pl. Resp. Def. Mot. Dismiss 3; Pl. Am. Compl. ¶ 112. Mr. Cunningham used the

CheckFreePay bill-payment account to make unauthorized transfers from the Aero Finance checking account totaling approximately $33,000. Pl. Am. Compl. ¶ 31. Plaintiffs allege that Mr. Callier reported the fraud to Defendant by telephone on six occasions but that Defendant took no action, and that the unauthorized transfers ceased only when Plaintiffs closed the Aero Finance checking account. *Id.* at ¶¶ 33–42, 55–56. Because of the unauthorized transfers, "Aero Finance was unable to write . . . loans," "unable to cash checks," and "unable to sell lottery tickets." *Id.* at ¶¶ 48, 50, 52. The injury to Aero Finance caused "stress for the owners," Mr. Callier and Mr. Purtz, and personal financial injury in due course. *Id.* at ¶¶ 2–3, 57.

Plaintiffs filed their Amended Complaint *pro se* on December 19, 2014, bringing claims under the USA Patriot Act, the Bank Secrecy Act, 18 U.S.C. § 1343 (a criminal wire-fraud statute), the Electronic Fund Transfer Act, and the common law of negligence. On January 5, 2015, Defendant filed its Motion. On January 14, 2015, Plaintiffs responded, and on January 21, 2015, Defendant replied.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read together with Federal Rule of Civil Procedure 8(a) ("Rule 8(a)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Consistent with Rule 8(a)(2)'s requirement that the complaint "show" and not merely allege that the plaintiff is entitled to relief, the well-pleaded facts must do more than "permit the court to infer . . . the mere possibility of misconduct." *Id.* Thus, "conclusory statements are 'not entitled to the assumption of truth.'" *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 644 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

## ANALYSIS

Plaintiffs allege violations of the USA Patriot Act, the Bank Secrecy Act, 18 U.S.C. § 1343 (a criminal wire-fraud statute), the Electronic Fund Transfer Act ("EFTA"), and the common law of negligence. Defendant argues that Plaintiffs lack standing to pursue their claims and, further, that Plaintiffs have failed to state any claim at all. Because Plaintiffs' statutory claims can be disposed of easily, the Court will address them first.

1. **Statutory Claims**

The disposition of Plaintiffs' claims under the USA Patriot Act, the Bank Secrecy Act, and 18 U.S.C. § 1343 turns on a common issue—whether the statutes create private rights of action. Thus, the Court will analyze these claims together. The Court will analyze Plaintiffs' EFTA claim separately.

a. **USA Patriot Act, Bank Secrecy Act, and 18 U.S.C. § 1343**

Defendant argues that the USA Patriot Act, the Bank Secrecy Act, and 18 U.S.C. § 1343 create no private rights of action. This is correct. *See, e.g., Med. Supply Chain, Inc. v. US Bancorp, NA*, 112 F. App'x 730, 731 (10th Cir. 2004) (affirming district court's holding that USA Patriot Act does not create private right of action); *Ray v. First Nat'l Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) (same); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (holding that "the Bank Secrecy Act does not create a private right of action"); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006) (same); *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013) (explaining that "criminal statutes such as 18 U.S.C. § 1343, which criminalizes wire fraud . . . provide no private right of action"). Plaintiffs cite no contrary authority, and indeed the Court could find none. Thus, Plaintiffs' claims under these statutes should be dismissed.

b. **Electronic Fund Transfer Act**

The EFTA applies "to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(a). The EFTA defines "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2). "Therefore, the EFTA only protects consumers who make transfers to or from accounts established primarily for

personal, family or household purposes; consumers who make transfers to or from commercial accounts are not protected." *Pfeffer v. HAS Retail, Inc.*, No. SA-11-CV-959-XR, 2012 WL 1910034, at *3 (W.D. Tex. May 24, 2012); *see also Fischer & Mandell LLP v. Citibank, N.A.*, No. 9 Civ. 1160 (RJS), 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009) ("[T]he EFTA does not apply to accounts that are used primarily or solely for commercial purposes."); *Regatos v. North Fork Bank*, 257 F. Supp. 2d 632, 638 n.10 (S.D.N.Y. 2003) (holding that EFTA did not apply because "the purpose of the account in question was purely commercial").

The checking account in this case was commercial. Plaintiffs refer to the checking account as the "Aero Finance checking account." Pl. Am. Compl. ¶ 112. Further, Plaintiffs state that the checking account was "opened for business reasons" and that its depletion made "Aero Finance . . . unable to write . . . loans," "unable to cash checks," and "unable to sell lottery tickets"—in effect, unable to do business. Pl. Resp. Def. Mot. Dismiss 3; Pl. Am. Compl. ¶¶ 48, 50, 52. Because the account at issue was not established primarily for personal, family, or household purposes, the EFTA does not apply. Therefore, Plaintiffs' EFTA claim should be dismissed. The Court now turns to Plaintiffs' negligence claim.

2. **Negligence**

Defendant argues that Plaintiffs' negligence claim fails because Defendant owed Plaintiffs no duty of care. For several reasons, the Court is not prepared to dismiss Plaintiffs' negligence claim on no-duty grounds. Whether a common-law duty of care exists is a matter of state law. *Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999). In its Motion, Defendant assumes without explanation that Texas law applies in this case. Yet, in concluding that it owed Plaintiffs no duty, Defendant relies mainly on a Sixth Circuit case decided under Michigan law. *See SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357–58 (6th Cir. 2014)

(holding that under Michigan law, bank owed no duty to money-transfer processor in whose name fraudulent bank account was opened by third party). Besides being decided under Michigan law, *SFS Check* also is distinguishable on the facts. In *SFS Check*, the defendant bank apparently lacked notice of the fraudulent nature of the account opened in the plaintiff's name. *Id.* at 354–55. But here, Plaintiffs allege that they informed Defendant of the account's fraudulent nature on six occasions. Pl. Am. Compl. ¶¶ 33–42. Plaintiffs also allege that, at one point, Defendant agreed to remove Aero Finance's checking account from the bill-payment account but then failed to in fact remove it. *Id.* at ¶ 38. Thus, the facts alleged here differ importantly from those in *SFS Check*.

        Further—and again setting aside the question of which state's law governs the duty issue—the Court notes that a federal court in this district denied a defendant's motion to dismiss on no-duty grounds in a case presenting similar facts. In *Torres v. Valencia*, the plaintiff alleged that the defendant bank negligently allowed a third party to open a bank account in the plaintiff's name by presenting a facsimile of the plaintiff's passport and forging his signature.[1] No. CIV.A. SA06CA582-FB, 2006 WL 3779815, at *1, *3–5 (W.D. Tex. Sept. 27, 2006). In holding that a duty might exist under Texas law, the court distinguished two Texas state-court cases finding no duty under similar circumstances. *See id.* at *3–5 (declining to apply *Miller-Rogaska, Inc. v. Bank One, N.A.*, 931 S.W.2d 655, 663–64 (Tex. App.—Dallas 1996, no writ), and *Guerra v. Regions Bank*, 188 S.W.3d 744, 745–47 (Tex. App.—Tyler 2006, no pet.), on facts presented). The court also favorably cited *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996), which is at the center of much disagreement about whether banks and other financial-services companies owe a duty to victims of identity theft when fraudulent

---

[1] Plaintiffs do not allege exactly how, apart from forging Mr. Callier's signature, Mr. Cunningham succeeded in opening a CheckFreePay bill-payment account linked to Aero Finance's checking account. Such details may come to light in discovery and help clarify the duty issue.

6

accounts are opened in the victims' names. *Id.*; *see also Guerra*, 188 S.W.3d at 745–47 (disapproving of *Patrick*); *Brunson v. Affinity Fed. Credit Union*, 199 A.2d 1112, 1122–25 (cataloguing divergent responses to *Patrick*).

Given the complexity of the duty question, the Court will decline to answer it until after the issue of Plaintiffs' prudential standing is resolved.[2] There are two basic types of standing: constitutional standing, which derives from Article III's case-or-controversy requirement, and prudential standing, which is a judicial innovation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing is jurisdictional; it implicates a court's subject matter jurisdiction. *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983). Thus, a court must satisfy itself of a plaintiff's Article III standing as a preliminary matter. *Id.* at 237. Prudential standing is different—it goes to a court's administrative discretion to hear a case. *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (quoting *Lewis*, 699 F.2d at 236). A court may raise the issue of standing—either Article III or prudential—sua sponte at any time. *See Davis v. Blackburn*, 803 F.2d 1371, 1372–73 (5th Cir. 1986) (acknowledging issue of "a prudential limitation on the exercise of our jurisdiction here, even if it must be raised

---

[2] In addressing Plaintiffs' statutory claims, the Court looked past the prudential standing issue. For several reasons, the Court believes it was entitled to do so. First, a court may choose to raise—or not to raise—the issue of prudential standing sua sponte at any time. *Davis v. Blackburn*, 803 F.2d 1371, 1372–73 (5th Cir. 1986); *Eastman Chem. Co. v. PlastiPure, Inc.*, 969 F. Supp. 2d 756, 766 (W.D. Tex. 2013), *aff'd*, 775 F.3d 230 (5th Cir. 2014). In *United States v. Johnson*, the Fifth Circuit described "prudential standing limitations" as "an unneeded avoidance when there is a clear answer to the merits question." 632 F.3d 912, 920 (5th Cir. 2011). In that case, the court chose to overlook a prudential-standing issue in order to reach the merits, in part because of "the simplicity of the merits of [the appellant's] claim." *Id.*; *see also Kennedy v. Allera*, 612 F.3d 261, 270 n.3 (4th Cir. 2010) (stating that "prudential standing questions may be avoided in order to decide a case on the merits"). This is consistent with the nature of prudential standing as a matter of administrative discretion. Further, prudential standing is analyzed with respect to individual claims, and a party may have prudential standing as to some claims but lack it as to others. *See, e.g., Permapost Prod., Inc. v. McHugh*, No. 13-cv-1736, 2014 WL 3056506, at *7–12 (D.C. July 7, 2014) (finding prudential standing as to some of plaintiffs' claims but not as to others). Thus, a court "may assume the prudential standing of a litigant to assert a particular claim so that it may dispose of a case on the merits." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 559 n.11 (5th Cir. 1998). Here, the Court could have overlooked prudential standing altogether at this stage in the litigation only to raise it sua sponte later on. Thus, the Court could have achieved the same result—dismissal of the statutory claims on the merits—by simply declining to consider prudential standing until later in the proceedings, albeit at a greater cost to the Parties and the Court. Critically, Plaintiffs are not prejudiced by the timely dismissal of claims that fail regardless of whether brought by Plaintiffs as individuals or by Aero Finance.

*sua sponte*"); *Eastman Chem. Co. v. PlastiPure, Inc.*, 969 F. Supp. 2d 756, 766 (W.D. Tex. 2013), *aff'd*, 775 F.3d 230 (5th Cir. 2014) ("[T]he Court will briefly address the prudential standing argument because such an argument may be raised *sua sponte* at any time"); *cf. Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 88–89 (5th Cir. 2011) ("[R]ipeness requirements are merely prudential, not jurisdictional, so although a court may raise them *sua sponte*, it may consider them waived or forfeited as well." (internal citations omitted)). Thus, to the extent Defendant overlooked the issue of prudential standing, the Court raises it sua sponte.

Defendant argues in its Motion that Plaintiffs lack Article III standing. This is incorrect. Article III standing "requires, at a minimum, three elements: injury in fact, a 'fairly traceable' causal link between that injury and the defendant's conduct, and the likelihood that the injury will be 'redressed by a favorable decision.'" *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560–61). Plaintiffs unquestionably satisfy the Article III-standing requirements: Plaintiffs suffered an injury traceable to Defendant's actions, and an award of damages based on a finding of negligence would redress that injury. *See Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319–20 (5th Cir. 1999) (explaining why shareholders of closely held corporation had Article III standing to sue third party for diminution in value of corporate stock). Here, as in *Ensley*, "[t]he real issue is not whether there is jurisdiction, but the prudential limitation on our *exercise* of that jurisdiction over a *jus tertii*" or "third party plaintiff." *Id.* at 320.

Even if the requirements for Article III standing are met, a plaintiff may still lack standing under the "prudential principles" of standing doctrine. *Lewis*, 699 F.2d at 236. "Trial courts are exhorted to consider three prudential concerns when making a determination of standing." *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999),

*rev'd on other grounds on reh'g en banc sub nom. Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001). Of those, one is relevant here: "whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *See id.* (quoting *Murray v. City of Austin, Tex.*, 947 F.2d 147, 151 (5th Cir. 1991)).

Plaintiffs sue in their individual capacity as natural persons.[3] Pl. Am. Compl. ¶¶ 2–3. But their Amended Complaint shows that their claims arise from an injury to their business, Aero Finance. *Id.* at ¶¶ 2–3, 48, 50, 52–61, 71, 95, 112, 120. Although the checking account depleted by the unauthorized transactions was "in the name of Plaintiffs Callier and Purtz," it was "opened for business reasons." Pl. Resp. Def. Mot. Dismiss 3. In their Amended Complaint, Plaintiffs refer to the checking account as the "Aero Finance checking account."[4] Pl. Am. Compl. ¶ 112. Further, as the account was depleted, "Aero Finance was unable to write . . . loans," "unable to cash checks," and "unable to sell lottery tickets." *Id.* at ¶¶ 48, 50, 52. This, in turn, caused "stress for the owners," Mr. Callier and Mr. Purtz, and personal financial injury in due course. *Id.* at ¶¶ 2–3, 57. Thus, the fraud injured Aero Finance directly. Injury to Aero Finance's owners followed—but these injuries were indirect, flowing only from the injury to Aero Finance.

Because of this, Plaintiffs lack standing under the prudential limitation on the Court's exercise of jurisdiction over third-party plaintiffs. In the Fifth Circuit, "a shareholder lacks 'standing' under this prudential limitation" to sue for an injury to the corporation. *Ensley*, 171 F.3d at 320; *see also Crocker v. Fed. Deposit Ins. Corp.*, 826 F.2d 347, 352 (5th Cir. 1987)

---

[3] Plaintiffs state in ¶¶ 2–3 of their Amended Complaint that they are natural persons; further, the names "Brandon Callier" and "Devon Purtz"—not Aero Finance—appear in the case heading.

[4] In determining whether an account is a business account, courts look to how the account is used, not just to the names of the signatories. *See, e.g., Regatos*, 257 F. Supp. 2d at 639 n.10 (finding that bank account was business account where it was used for commercial purpose, even though signatories were plaintiff and his wife and daughter).

("[B]ecause the only injury the [plaintiffs] have effectively alleged is a decline in the value of the [corporation's] stock, they have failed to state a direct, personal injury distinct from that suffered by the corporation that would permit them to maintain an individual cause of action."); *Cottingham v. Gen. Motors Corp.*, 119 F.3d 373, 379 (5th Cir. 1997) (holding that shareholder-employee of car dealership lacked prudential standing to sue individually to enforce contract he signed on dealership's behalf). The same principle applies to members of limited liability companies. *See Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2014 WL 1243676, at *9 (N.D. Tex. Mar. 25, 2014) (dismissing claims of members of limited liability company on standing grounds because members were not "personally injured" when company was defrauded).

As the Fifth Circuit explained in *Ensley*, Federal Rule of Civil Procedure 17 codifies the prudential limitation on exercising jurisdiction over third-party plaintiffs. *See Ensley*, 171 F.3d at 320 (finding that Rule 17(a) governed inquiry into prudential standing of third-party plaintiff). Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Accordingly, Rule 17 permits a district court to dismiss an action for failure to prosecute in the name of the real party in interest—but only after "a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* Thus, the Court will allow a reasonable time for Aero Finance to ratify, join, or be substituted into the action. However, as explained above, the only remaining claim is for negligence because all of Plaintiffs' statutory claims fail as a matter of law—and would have failed for the same reasons if brought by Aero Finance.

If Aero Finance joins or is substituted into the action, it must obtain licensed counsel; it cannot litigate *pro se*. See *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (per curium) ("[A] limited liability company . . . may appear in federal court only through a licensed attorney."); *United States v. Hagerman*, 545 F.3d 579, 579 (7th Cir. 2008) (citing *Lattanzio* for this rule); *In re Heyl*, 770 F.3d 729, 730–31 (8th Cir. 2014) (same); *Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012) (same); *United States v. Slay*, No. 1:11-CV-263, 2013 WL 1312559, at *10 (E.D. Tex., Feb. 27, 2013) (same); *AK-BBN Corp. v. Black Horse Energy LLC*, No. 3:13-cv-134, slip op. at 1–3 (N.D. Tex. Apr. 14, 2014), https://ecf.txnd.uscourts.gov/doc1/17718092462 (ordering defendant limited liability company to obtain counsel and admonishing its "CEO" that he could not represent company *pro se*). Further, if Aero Finance elects to ratify rather than join or be substituted into the action, Plaintiffs must obtain licensed counsel because they cannot, as individuals, continue *pro se* on what is essentially a corporate claim. See *M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. App'x 671, 675 (5th Cir. 2014) (per curium) (refusing to allow sole shareholder of corporation to assign corporate claim to himself and then use Federal Rule of Civil Procedure 24 to intervene in lawsuit and thereby "circumvent" the "well-established rule that in federal court, corporations must be represented by counsel"); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (declining to permit "any circumvention of the rule [against laypersons representing corporations in litigation] by the procedural device of an assignment of the corporation's claims to the lay individual"); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1384–86 (11th Cir. 1985) (rejecting individual's attempt to proceed *pro se* on claim assigned to him by corporation).[5] In short,

---

[5] Arguably, the plain text of Rule 17 supports this conclusion as well. Rule 17 states that "[a]fter ratification, joinder, or substitution, the action proceeds *as if it had been originally commenced by the real party in interest*." Fed. R. Civ. P. 17(a)(3) (emphasis added). Here, the real party in interest is Aero Finance. Certainly, if Aero Finance had

prosecuting the negligence claim will require a licensed attorney regardless of whether Aero Finance chooses to ratify, join, or be substituted into the action.

If Aero Finance fails to ratify, join, or be substituted into the action within a reasonable time, which the Court determines to be thirty days, the Court will dismiss the action with prejudice for lack of prudential standing.[6] *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal under prudential . . . standing is properly granted under Rule 12(b)(6)."); *Monique Pringle v. Atlas Van Lines*, 14 F. Supp. 3d 796, 800 (N.D. Tex. 2014) (dismissing with prejudice for lack of prudential standing); *Veverica v. Drill Barge Buccaneer No. 7*, 488 F.2d 880, 887 (5th Cir. 1974) (citing with approval district court's grant to plaintiff of thirty days to join real party in interest under Rule 17(a) in *Am. Dredging Co. v. Federal Ins. Co.*, 309 F. Supp. 425, 429 (S.D.N.Y. 1970)).

## CONCLUSION

Plaintiffs' claims under the USA Patriot Act, the Bank Secrecy Act, and 18 U.S.C. § 1343 (a criminal wire-fraud statute) fail because those statutes create no private rights of action. Plaintiffs' claim under the EFTA fails because the Aero Finance checking account was a commercial account and, therefore, not covered by the EFTA. Plaintiffs' negligence claim is the only remaining claim. However, because Plaintiffs, as individuals, lack prudential standing to sue for injuries to Aero Finance, the Court will dismiss the negligence claim with prejudice unless Aero Finance ratifies, joins, or is substituted into the action within thirty days.

---

originally commenced this action, it could not have done so *pro se*. Thus, the action cannot proceed with Plaintiffs prosecuting Aero Finance's negligence claim *pro se*.

[6] Such a dismissal would operate only as to the parties named in this lawsuit and would not preclude any future action by Aero Finance. *See, e.g., Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172–76 (5th Cir. 1992) (explaining res judicata).

Therefore, the Court is of the opinion that Defendant's Motion should be granted in part and, subject to Aero Finance's ratification, joinder, or substitution pursuant to Rule 17(a)(3), denied in part.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's "Motion to Dismiss First Amended Complaint and Memorandum of Law in Support" is **GRANTED** as to Plaintiffs' claims under the USA Patriot Act, the Bank Secrecy Act, 18 U.S.C. § 1343, and the Electronic Fund Transfer Act.

**IT IS FURTHER ORDERED** that Defendant's Motion is **DENIED** as to Plaintiffs' negligence claim, subject to Aero Finance, LLC's ratification, joinder, or substitution upon a motion filed by a licensed attorney pursuant to Federal Rule of Civil Procedure 17(a)(3) **within thirty days**.

**SIGNED** this **17th** day of **March 2015**.

_____
DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE